# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK LEROY BLACK, | : | CASE NO. 3:13-cv-00621-GBC |
| | : | |
| Plaintiff, | : | (MAGISTRATE JUDGE COHN) |
| | : | |
| v. | : | MEMORANDUM TO DENY PLAINTIFF'S |
| | : | APPEAL |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | Docs. 5,6,7,8,9 |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM TO DENY PLAINTIFF'S APPEAL

### I. Procedural History

On February 26, 2010, Jack Leroy Black ("Plaintiff") filed an application for Title II Social Security Disability benefits ("DIB"), with an alleged onset date of February 1, 2010 (Tr. 90-91).

This application was denied, and on August 2, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), where Plaintiff appeared with counsel and testified, as did a vocational expert (Tr. 23-34). On August 4, 2011, the ALJ issued a decision finding that Plaintiff

was not entitled to DIB because Plaintiff could perform sedentary work, except that he may frequently balance, stoop, kneel, crouch, and crawl (Tr. 14). Plaintiff may occasionally climb stairs and may not climb ladders (Tr. 14). The ALJ further determined, based on VE testimony, that Plaintiff could perform his past relevant work as a bookkeeper and auditor (Tr. 19). On January 11, 2013, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6).

On March 8, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1. On May 23, 2013, Commissioner filed an answer and administrative transcript of proceedings. Docs. 4,5. In June, July, and August 2013, the parties filed briefs in support. Docs. 6,7,8. On May 1, 2014, the Court referred this case to the undersigned Magistrate Judge. On May 19, 2014, the parties consented to Magistrate Judge jurisdiction. Doc. 11.

## II.    Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It may be

less than a preponderance. <u>Jones</u>, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

### A. Plaintiff's Statements and Activities

Plaintiff is a fifty-four (54) year old male who alleges disability on or around February 1, 2010; he was fifty-one (51) years of age at the alleged date of onset.

During the relevant period, Plaintiff collected unemployment benefits, attesting to the Commonwealth of Pennsylvania that he was ready, willing, and able to work (Tr. 27). He handled

his personal care, cooked, took out the trash, and drove a car (Tr. 27-28). Plaintiff testified that he had no problem sitting, could squat to bend down to pick up an object, and lift his arms over his head (Tr. 29). He testified that his prescribed medications helped him without side effects (Tr. 300).

Plaintiff alleged disability beginning February 1, 2010 (Tr. 116-25). However, his alleged onset date does not correspond to specific event, injury, or medical treatment date.

The ALJ concluded Plaintiff has the "severe" impairments of coronary artery disease, hypertension, venous stasis, bilateral edema, bilateral leg ulcers, and obesity, as defined in 20 C.F.R. 404.1520(c) and 416.920(c). (Tr. 12). Plaintiff is seventy-one (71) inches tall and four-hundred and thirty seven (437) pounds. As a result, Plaintiff's BMI at the date of onset was 60.9, indicating that Plaintiff suffers from morbid obesity, as acknowledged by the ALJ. (Tr. 14).

### B. Relevant Medical Evidence

In January 2010, Plaintiff made two visits to his primary care physician for chronic leg edema, pain in his right lower extremity, and a skin infection (Tr. 182-85). On physical examination, Plaintiff was in no acute distress, albeit obese (Tr. 184). A review of Plaintiff's body systems was negative for fatigue, fever, night sweats, cough, dyspnea, wheezing, chest pain, and irregular heart beat / palpitations (Tr. 182).

Plaintiff was referred to the Pinnacle Health Wound Care for an ulcer on his right leg (Tr. 199-200). Plaintiff denied fever or chills (Tr. 199). He continued treatment for his right leg ulcer, as well as an ulcer that developed on his left leg (Tr. 199-226, 262-93, 311-74, 382-98, 400-28).

In March of 2010, Plaintiff saw Brijeshwar Maini, M.D., for cardiac evaluation (Tr. 193-94). A non-invasive work-up revealed diminished ankle-brachial indices bilaterally with evidence of severe infrainguinal disease (Tr. 193, 195). Dr. Maini recommended further diagnostic testing (Tr.

193). A cerebrovascular duplex study dated March 26, 2010, showed no significant stenosis of the right internal carotid artery (Tr. 190). The study showed mild stenosis of the left common carotid artery and mild stenosis in the left internal carotid artery (Tr. 190). Plaintiff had no significant stenosis in the left external carotid artery (Tr. 190). The only severe stenosis was in the right external carotid artery (Tr. 190). The study also showed antegrade flow in both vertebral arteries; heterogeneous plaque noted in the left common, bilateral external and bilateral internal carotid arteries; and mild to moderately elevated velocities in the proximal subclavian arteries bilaterally (Tr. 190). Dr. Maini recommended a follow-up study in one year (Tr. 190).

Dr. Maini also ordered a Transthoracic Echo Report for indications of chest pain, hypertension, and dyslipidemia (Tr. 191). The testing was noted to be of limited quality study due to poor acoustic windows (Tr. 191). The study, however, showed probable normal left ventricular size and function, left ventricular ejection fraction of sixty percent; right ventricle not well visualized, normal right ventricular size and function; and no significant valvular abnormalities (Tr. 191).

A May 12, 2010 Stress Echo showed abnormal dobutamine stress echocardiograph study (Tr. 307).

On May 24, 2010, Dr. Maini recommended a cardiac catherization and possible percuataneous revascularization (Tr. 250). Dr. Maini also recommended that Plaintiff work very diligently to lose weight (Tr. 250).

A June 1, 2010 chest study showed mild bibasilar atelectasis and no acute cardiopulmonary abnormality (Tr. 309).

On July 2, 2010, Dr. Maini recommended continued medication management (Tr. 254). He

noted that there was a possibility that Plaintiff would not be considered for surgical revascularization because of his obesity (Tr. 253-54).

On July 21, 2010, Plaintiff saw John L. Pennock, M.D., concerning his coronary artery disease (Tr. 256). Plaintiff's main symptom was shortness of breath (Tr. 256). He denied angina (Tr. 256). A cardiac catherization showed multi-vessel coronary artery disease with 100% occlusion of the left anterior descending artery (LAD) filling by collaterals (Tr. 302). A long eighty percent stenosis of the mid to distal right coronary artery (Tr. 302). Plaintiff had low normal ejection fraction, fifty to fifty-five percent, with very mild anterior hypokinesis (Tr. 302). Dr. Pennock did not believe that Plaintiff was a candidate for bypass surgery due to LAD not being bypassable, and also because of Plaintiff's weight (Tr. 256). He recommended medication therapy (Tr. 256).

In October 2010, Dr. Maini noted that Plaintiff was stable from a cardiac standpoint (Tr. 376). Dr. Maini continued to recommend medical therapy (Tr. 376). Dr Maini also recommended that Plaintiff keep a close watch on his elevated blood pressure, and find a weight loss program, possibly a bariatric surgeon (Tr. 376-77).

By February 2011, Plaintiff's left calf wound had no tunneling or undermining (Tr. 373). There was a moderate amount of serious drainage noted, but the wound pain level was zero (Tr. 373). The wound margin was flat and intact (Tr. 373). There was seventy-six to one hundred percent slough within the wound bed, with no eschar or granulation present (Tr. 373). There was also no tunneling or undermining noted on the right calf wound (Tr. 373). There was no drainage noted (Tr. 373). The wound margin was attached to the wound base (Tr. 373). There was seventy-six to one hundred percent epithialization and one to twenty-five percent pink granulation within the wound bed, with no eschar present (Tr. 373).

### C. Opinion Evidence

On May 20, 2010, state agency physician Candelaria Legaspi, M.D., completed a Physical Residual Functional Capacity Assessment Form (Tr. 231-37). Dr. Legaspi noted that Plaintiff has severe peripheral vascular disease, but did not meet the listing (Tr. 237). She noted that Plaintiff's wound healed and he had no evidence of venous insufficiency per vascular consultation (Tr. 237). Dr. Legaspi opined that Plaintiff could occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and push and/or pull on an unlimited basis (Tr. 232). Plaintiff could occasionally climb ramps/stairs, ladder/rope/scaffolds, and balance, and frequently perform other postural functions (Tr. 233).

### D. Administrative Hearing

At the administrative hearing held on August 2, 2011, the ALJ elicited testimony from a VE (Tr. 33). The ALJ asked the VE whether a hypothetical person with the claimant's age, education, and work experience, who is able to perform sedentary work, occasionally climb stairs, never climb any ladders, and frequently balance, stoop, kneel, crouch, and crawl, could perform the claimant's past relevant work (Tr. 33). The VE testified that the hypothetical individual could perform the claimant's past relevant work as a bookkeeper and auditor (Tr. 33).

### IV.      Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A.    Plaintiff Allegations of Error

### 1.    The ALJ Found Plaintiff Did Not Meet the Criteria for a Listed Impairment

Plaintiff contends the ALJ erred by failing to find that Plaintiff met the requirements for a listed impairment. Pl. Br. at 4-8, Doc 6.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Plaintiff contends he meets and/or medically equal the criteria of Chronic heart failure, Section 4.02(A)(1) of 20 C.F.R. Part 404, Subpart P, Appendix 1. Section 4.02(A)(1) provides:

"4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied. A. Medically documented presence of one of the following: 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 4.02(A).

Additionally, Section 4.00(D)(1)(A)(i) provides, in pertinent part:

"1. What is chronic heart failure (CHF)? a. CHF is the inability of the heart to pump enough oxygenated blood to body tissues. This syndrome is characterized by symptoms and signs of pulmonary or systemic congestion (fluid retention) or limited cardiac output. Certain laboratory findings of cardiac functional and structural abnormality support the diagnosis of CHF. There are two main types of CHF: (i) Predominant systolic dysfunction (the inability of the heart to contract normally and expel sufficient blood), which is characterized by a dilated, poorly contracting left ventricle and reduced ejection fraction (abbreviated EF, it represents the percentage of the blood in the ventricle actually pumped out with each contraction)." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 4.00(D)

The ALJ reviewed the record to determine whether Plaintiff met the requirements of a listing.

"Under the cardiovascular listing, the claimant's coronary artery disease does not meet listing 4.02A because the systolic failure, with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30% or less during a period of stability is not met. The claimant underwent thansthoracic echocardiogram which noted an ejection fraction of 60%. There is no diastolic failure with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with

an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability. In addition, there are no persistent symptoms of heart failure, which very seriously limit the ability to independently initiate, sustain or complete activities of daily living. There have not been three or more separate episodes of acute congestive heart failure within a consecutive 12-month period. The claimant has not had the inability to perform on an exercise tolerance test." (Tr. 15).

"In terms of the claimant's alleged cardiac impairment, the claimant underwent objective testing in March 2010 due to symptoms of shortness of breath and angina in conjunction with his bilateral ulcers and infraiguinal disease with decreased ankle-brachial indices. The testing found no significant stenosis of the right internal carotid artery and only mild stenosis of the left common carotid artery. There was mild stenosis in the left internal carotid artery and no significant stenosis in the left external carotid artery. There was mild stenosis in the left internal carotid artery and no significant stenosis in the left external carotid artery. The only severe stenosis was noted in the right external carotid artery. There was some heterogeneous plaque noted in the left common, bilateral external and bilateral internal carotid arteries. The claimant demonstrated mild to moderately elevated velocities in the proximal subclavian arteries bilaterally and a follow-up study was recommended in 12 months." (Tr. 17).

"The claimant underwent additional diagnostic testing to determine an etiology for the claimant's chest pain, hypertension and dyslidemia. This testing indicated normal left ventricular size and function with no significant valvular abnormalities. Also of note, the quality of this study was limited due to the poor acoustic windows in conjunction with the claimant's size. There was no prior study available for comparison. The [ALJ] notes that the claimant's treating cardiologist, Brljeshwar

Maini MD, reviewed these results. Dr. Maini reviewed the claimant's social history [and] noted continued tobacco abuse despite the recommendation for a smoking cessation program. Furthermore, the claimant drinks alcohol and does not exercise. The claimant has no family history of vascular disease or coronary disease." (Tr. 18).

"Despite these results, the claimant continued experiencing shortness of breath but no angina and underwent a cardiac catheterization on June 2, 2010. The catheterization demonstrated minor disease in the circumflex system and 80% stenosis in the mid to distal right coronary artery. There was also a low normal ejection fraction with very mild anterior hypokinesis." (Tr. 18).

"The claimant visited with his cardiologist, Dr. Maini in October 2010 and was found to be stable from a cardiac standpoint. Dr. Maini recommended continued medical therapy and noted the claimant's blood pressure was slightly elevated. He annotated that the claimant should keep a close watch on this. If the pressure remained elevated, he would consider adjusting his antihypertensive regimen. Of particular importance, Dr. Maini asked the claimant to find a weight loss program and also a bariatric surgeon. He opined that the claimant must lose weight. He scheduled a follow up appointment to assess the claimant's progress in terms of his weight loss. In the meantime, he decided to continue to treat the claimant's coronary artery disease with medication management." (Tr. 18).

At step three of the sequential evaluation process, the ALJ determined that Plaintiff's impairments, either singularly or in combination, did not meet or medically equal the criteria of any listed impairment (Tr. 30, Finding No. 4). The Listed Impairments (the Listings), found at 20 C.F.R. pt. 404, subpt. P, app. 1, define impairments that would prevent an adult from performing any gainful activity, not just substantial gainful activity. 20 C.F.R. §§ 404.1525, 416.925; Sullivan, 493 U.S. at

532. The medical criteria defining the presumption of disability under the Listings were explicitly set at a "higher level of severity than the statutory standard." Id. The reason for this difference is that "the Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." Id.; see also Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (providing that if an impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."). The United States Supreme Court has indicated that use of the Listings is valid for adults because "any shortcomings in the Listings are remedied at the final vocational steps of the Commissioner's evaluation process." Sullivan, 493 U.S. at 534-35. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. at 530.

In this case, Plaintiff did not meet his burden at step three of the sequential evaluation process (Pl.'s Br. at 4-8). Plaintiff does not meet the Listing 4.02 (Chronic Heart Failure) because he does not have medically documented (1) systolic failure, with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30% or less during a period of stability (not during a period of acute heart failure), or (2) diastolic failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during a period of acute heart failure) 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02 (2012).

As the ALJ discussed, a Transthoracic Echo Report dated March 26, 2010 showed probable left ventricular ejection fraction of 60% (Tr. 191). Although the report was of limited quality study due to poor acoustic windows (Tr. 191), a subsequent study showed low normal ejection fraction 50% to 55% with very mild anterior hypokinesis (Tr. 302). Hence, the record does not show evidence of ejection fraction of 30% or less (Tr. 15). Moreover, there was no evidence of diastolic

failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during a period of acute heart failure) (Tr. 14). Hence, Plaintiff's cardiovascular impairment did not meet or equal the requirements of Section 4.02 of the Listings (Tr. 30).

As articulated in the ALJ's decision and discussed herein, substantial evidence in the record supports the ALJ's step-three determination, and Plaintiff failed to meet his burden at step three of the sequential evaluation process.

Plaintiff contends "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d. Cir. 2009). See SSR 02-1p. Moreover, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with his or her impairments, on his or her workplace function at step three and at every subsequent step." Id. Pl. Br. at 6, Doc. 6.

The ALJ considered Plaintiff's obesity to determine whether he met the requirements of a listing. "The medical record raises obesity as a severe impairment. The [ALJ] notes that the claimant never reported or testified to any limitation specifically related to obesity. However, the record indicates that the claimant is obese; he is seventy-one inches tall and has weighed at least four-hundred and thirty seven pounds since his alleged onset date with a BMI of 60.9 indicating morbid obesity. The claimant's providers have indicated that the claimant's weight is negatively affecting his cardiac status and producing shortness of breath. Furthermore, they indicate that correction of morbid obesity is recommended as part of his overall treatment regimen. Because his obesity could be contributing to or exacerbating his cardiac disorder, the [ALJ] finds that this impairment causes

more than minimal limitations in the claimant's functioning and is therefore severe." (Tr. 14-15).

"In terms of the claimant's obesity, it does not increase the severity of the claimant's coexisting impairments to the point where the combination meets any listing impairment." (Tr. 15).

Thus, the ALJ found Plaintiff's obesity did not increase the severity of Plaintiff's co-existing impairments to the point where the combination meets any listings (Tr. 15).

Plaintiff states the ALJ erred when he made the determination, lacking the required reasoning, that Plaintiff's impairment or combination of impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

The ALJ found Plaintiff did not meet the criteria for any other listing. "The claimant's impairments are not associated with medical findings required to meet any 3.00 (respiratory), 4.00 (cardiac) or 9.00 (endocrine) listing . . . Furthermore, there is no indication that the claimant's physical impairments of venous stasis, bilateral edema and bilateral ulcers are associated with sufficient findings to meet any relevant section of Listing 1.00 (Musculoskeletal System), 8.00 (Skin), 9.00 (Endocrine System) or 11.00 (Neurological). (Tr. 15).

**2.     The ALJ Evaluated Plaintiff under the Medical-Vocational Rules**

Plaintiff argues the ALJ erred when he continued to evaluate Plaintiff's age, education, and work experience. Pursuant to 20 C.F.R. § 404.1520(d), which states in pertinent part, "[w]hen your impairment(s) meets or equals a listed impairment . . . [and] meets the duration requirements of Appendix 1, we will find you disabled without considering your age, education, and work experience." Therefore, Plaintiff states the ALJ should have ceased his evaluation of Plaintiff and awarded benefits without continuing on to the fourth and fifth steps of the process. Pl. Br. at 8, Doc 6.

Since substantial evidence supports the ALJ's decision that Plaintiff did not meet the criteria

for a listing, and the ALJ properly proceeded through the remaining steps in the disability evaluation process.

### 3. ALJ Review of Medical Evidence in Determining Residual Functional Capacity

Plaintiff contends the ALJ erred in finding the residual functional capacity without properly evaluating the medical evidence. Pl. Br. at 3, 9-11, Doc. 6.

### a.      Case Law and Analysis

The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion. 20 C.F.R. § 404.1527(c)(4). A treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); Plummer, 186 F.3d at 429. If a treating source's opinion is not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion. Id. The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. Id. Likewise, the more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded. Id. The Commissioner is not bound by a treating physician's opinion, and may reject it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. Lyons-Timmons v. Barnhart, 147 F. App'x 313, 316 (3d Cir. 2005).

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind

the ALJ on the issue of functional capacity." <u>Chandler</u>, 667 F.3d at 361; <u>Coleman v. Astrue</u>, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The case law in this circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. <u>Chandler</u>, 667 F.3d 356 at 361. In so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir.1981). <u>Mistick v. Colvin</u>, No. 12-cv-1031, 2013 WL 5288261 (W.D. Pa. Sept. 18, 2013).

Plaintiff argues that the ALJ's RFC finding is flawed because the ALJ did not consider numerous records indicating Plaintiff's inability to ambulate effectively due to pain, as well as the need for Plaintiff to elevate his legs for 30 minutes of every hour that he is awake to a level near his heart (Pl.'s Br. at 8-9). Plaintiff also asserts that there is a lack of medical evidence countering his testimony as to his limitations (Pl.'s Br. at 9).

The ALJ reviewed the medical evidence to evaluate Plaintiff's residual functional capacity.

"The claimant alleges disability due to obesity and venous stasis. The claimant's venous stasis with resulting edema and ulcers makes it difficult for the claimant to dress and bathe. The claimant experiences constant swelling in his legs with aching and stabbing pain. Because of these symptoms, the claimant alleges difficulty lifting, squatting, bending, standing, walking, sitting, kneeling and he must use a handrail when climbing stairs. The claimant also reports that he has difficulty handling stress, not as a result of physical health impairments, but rather due to the untimely passing of his son." (Tr. 16).

"He testified that he puts his feet up for approximately 30 minutes for every hour that he is standing. In addition, the claimant lies down to nap two times per week for approximately one hour. The claimant experiences pain and takes Percocet to control this pain. He alleges this medication helps him and does not have any side effects. In general, the claimant reports difficulty sleeping and notes he can sleep at most 1-2 hours at a time which produces inconsistent rest." (Tr. 16).

"The claimant testified that he cannot clean dishes nor vacuum his home. He reported that someone else must take care of his yard. The claimant is able to drive but notes that, in general, his mobility is quite limited. He testified that he cannot bend over and touch his toes. The claimant alleges that he can walk less than one city block before his legs begin to ache. When the claimant stands in one spot for greater than 5 to 10 minutes, his pain will start again." (Tr. 16).

"He is able to engage in sedentary pleasure activities, such as watching television and working on the computer without significant reported difficulty other than the need to elevate his legs while sitting. While the claimant reportedly leads a very sedentary lifestyle, the [ALJ] notes he is involved with multiple social activities. The claimant frequently visits the American Legion, restaurants and his friends' homes." (Tr. 16).

"The claimant alleges he became unable to work as of February 1, 2010. While the claimant was experiencing some edema and leg pain, there were no other contributing factors to the claimant's inability to continue working. The claimant was not advised by any medical professionals to stop working. The claimant visited his family doctor, Dennis Saacks, M.D. on January 27, 2010. The claimant presented with chronic leg edema, some pain in his lower right extremity with an indication of a skin infection. The claimant was noted as being in no acute distress, obese and without chest pain, no irregular heartbeats nor palpitation. The claimant was negative for cough, dyspnea and wheezing. The claimant was negative for fatigue, fever and night sweats. Again, there was no

evidence contained within this treatment record which would indicate medical advice to discontinue employment. The [ALJ] gives these treatment notes great weight when considering the claimant's residual functional capacity." (Tr. 16-17).

"As for the opinion evidence, the [ALJ] considered the assessment of the State agency medical consultant. The consultant found that the claimant's treatment has generally been successful in controlling his symptoms. The claimant has been prescribed and taken appropriate medications for his alleged impairments and the records reveal that the medications have been relatively effective. The consultant found the claimant would be limited to sedentary work. The [ALJ] finds the claimant to be slightly more limited than the full range of sedentary work and therefore gives this assessment appropriate weight." (Tr. 18).

Significantly, Plaintiff proffers only his own testimony in support of his argument (Pl.'s Br. at 9-10). The medical record does not document an inability to ambulate effectively due to pain or the need for Plaintiff to elevate his legs for 30 minutes of every hour that he is awake to a level near his heart (Tr. 177-230, 242-377, 382-428). In fact, Dr. Maini noted that Plaintiff's condition was stable, and assessed no work-related limitations (Tr. 186-96, 242-54, 375-77). Moreover, the state agency physician opined that Plaintiff could perform the full range of sedentary work (Tr. 231-37). The ALJ accounted for Plaintiff's impairments by limiting him to reduced range of sedentary work, an RFC even more restrictive than found by the state agency physician (Tr. 18).

Thus, the ALJ's RFC finding includes only "credibly established limitations" and not all impairments alleged by claimant, Rutherford, 399 F.3d at 554. Accordingly, the ALJ relied on the record and testimony in determining Plaintiff's residual functional capacity, and the findings are supported by substantial evidence.

In Chandler, 667 F.3d at 362, the Third Circuit found that the district court had erred in

concluding that the "ALJ had reached its decision based on its own improper lay opinion regarding medical evidence." Id. "The ALJ– not treating or examining physicians or State agency consultants –must make the ultimate disability and RFC determinations." Id. at 361 (citing 20 C.F.R. 404.1527(e)(1), 404.1546(c)).

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional, but rather only the ones that she finds are credibly established by the record. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did not err by incorporating into her RFC finding only those limitations which she found to be credibly established by the objective medical evidence and the Court finds that the ALJ's RFC determination as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial record evidence. Finally, the Court finds that the ALJ evaluated the medical opinion evidence properly and in accordance with the applicable rules and regulations and that substantial record evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source statements from the mental health providers were not given controlling weight the ALJ discussed at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker were inconsistent with and contradicted by the other medical evidence of record, including their own notes and prior findings. The Court finds that the ALJ discharged her duty because she (i) demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory evidence in the record which conflicted with her findings, and (iii) explained why that contrary evidence was rejected or not given controlling weight. See Cotter, 642 F.2d at 705. Indeed, the overarching theme of the ALJ's decision was the complete lack of objective medical evidence which corroborated or even tended to support Plaintiff's complaints of severely disabling impairments and the Court agrees with the ALJ's finding that such corroborating evidence was woefully lacking in

the record. Plaintiff's subjective complaints were corroborated only by her own self-reports, which—for the reasons discussed by the ALJ—were not particularly credible. To that end, the Court finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's arguments to the contrary are completely unpersuasive, particularly given the minimal treatment record, the inconsistencies in the record that were highlighted and discussed by the ALJ . . . Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination of non-disability." Stewart v. Astrue, No. 13–73, 2014 WL 29035, at *1, n.1 (W.D. Pa. Jan. 2, 2014) (emphasis added).

Similarly in this case, the record does not support Plaintiff's assertions of disabling severity. Plaintiff's contentions of error are inconsistent with the objective evidence and activities of daily living. From the ALJ's extensive review, substantial evidence supports the weight accorded to the allegations and opinions of record.

### b.    ALJ's Credibility Determination

Plaintiff contends the ALJ erred by discounting her credibility. Pl. Br. at 9, Doc 6. The ALJ reviewed the record to evaluate Plaintiff's credibility.

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96–7p, 61 Fed. Reg. 34483 (July 2, 1996). In particular, an ALJ should consider the following factors: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of the plaintiff's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication for relief of the symptoms; (6) any measures the plaintiff uses or has used to relieve the symptoms; (7) the plaintiff's prior work record; and (8) the plaintiff's demeanor during the hearing. See 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3); Jury v. Colvin, No. 3:12-cv-2002, 2014 WL 1028439 (M.D. Pa. Mar. 14, 2014). When the Court reviews the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citing Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

The ALJ provided the reasons for discounting Plaintiff's credibility. "In terms of credibility, the [ALJ] finds the claimant to be less than credible in terms of his alleged limitations. Although the claimant alleges difficulty with walking throughout the record, the [ALJ] noted the claimant ambulated well at the hearing. Furthermore, the [ALJ] finds that the claimant continues to smoke, does not exercise, and has not lost weight as directed by his treating physician." (Tr. 18).

"In sum, the above residual functional capacity assessment is supported by the medical evidence of record and the opinions of the State agency medical and psychological consultants. While the record is sufficient to establish the claimant's medically determinable physical impairments, the medical evidence does not support the degree of symptoms and resulting limitations alleged by the claimant. Despite the claimant's allegations of disabling symptoms, the file does not contain any specific functional limitations assessed by a treating provider and does not indicate that it is medically necessary to lead a sedentary lifestyle. In fact, the record contains evidence of a recommendation to lose weight and exercise in order to improve his overall health. The

claimant's credibly established physical limitations secondary to his cardiac conditions, leg ulcers and obesity are accommodated in the above residual functional capacity through the limitation to less than the full range of sedentary work that allows the claimant to frequently balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb stairs and never climb ladders. There is no credible indication in the record as a whole that the claimant is more limited than found by the [ALJ]." (Tr. 18-19).

An ALJ's credibility determinations are entitled to deference. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 271 (3d Cir. 2003). Moreover, the ALJ is required to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. Hartranft, 181 F.3d at 362 (noting, "allegations of pain and other subjective symptoms must be supported by objective medical evidence" and citing 20 C.F.R. § 404.1529).

When assessing Plaintiff's RFC, the ALJ also carefully considered Plaintiff's testimony, but found that his complaints of disabling pain and limitations were not entirely credible (Tr. 16). An ALJ is not required to accept a claimant's testimony uncritically. Credibility determinations as to a claimant's testimony regarding his limitations are for the ALJ to make. Van Horn v. Schneider, 717 F.2d 871, 873 (3d Cir. 1983). The ALJ's credibility finding is entitled to deference and should not be discarded lightly, given his opportunity to observe the individual's demeanor. Murphy v. Schneider, 524 F. Supp. 228, 232 (E.D. Pa. 1981). Where an ALJ's credibility findings are supported by substantial evidence, those findings will not be disturbed on appeal. Hartranft, 181 F.3d at 363.

The ALJ considered Plaintiff's statements in assessing his RFC (Tr. 16-17). Although Plaintiff alleged difficulty walking, Plaintiff ambulated well at the hearing (Tr. 18). In accordance with the regulations, the ALJ also considered Plaintiff's non-compliance with treatment as he

continued to smoke, did not exercise, and did not lose weight as directed by his treating physicians (Tr. 18).

Plaintiff essentially requests that this Court re-weigh the evidence that led the ALJ to conclude that his coronary artery disease, hypertension, venous stasis, bilateral edema, bilateral leg ulcers, and obesity did not create disabling functional limitations, and reach a different conclusion. However, this Court is not permitted to do so. See Monsour Med. Ctr., 806 F.2d at 1190-91 (holding that the Court cannot re-weigh the evidence but must affirm if the Commissioner's decision is supported by substantial evidence).

As the Third Circuit recognized, medical conditions which can be reasonably controlled by medication or treatment are not considered disabling. 20 C.F.R. § 416.930; Brown, 845 F.2d at 1215. An ALJ is not required to give great weight to subjective complaints that are not supported by medical evidence. See Schaudeck v. Comm's of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999).

Determinations of credibility "are for the ALJ to make." Malloy v. Comm'r of Soc. Sec., 306 Fed. Appx. 761, 765 (3d Cir. 2009). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Applying these standards, there is no basis to override the ALJ's reasonable determination that Plaintiff's symptoms did not render him incapable of sedentary work.

Thus, the ALJ's decision was consistent with the medical evidence in the record and Plaintiff's testimony at the ALJ hearing. Accordingly, substantial evidence supports the ALJ's findings regarding Plaintiff's credibility.

Substantial evidence supports the ALJ's decision that Plaintiff could perform sedentary work, and the ALJ adequately explained his rationale in accordance with the controlling regulations. Therefore, the ALJ's decision should be affirmed.

### V.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the evidence as adequate, and the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate order in accordance with this memorandum to deny Plaintiff's appeal will follow.

Dated: September 30, 2014                         s/Gerald B. Cohn
                                                          GERALD B. COHN
                                                          UNITED STATES MAGISTRATE JUDGE